**48 CCPA**

## Application of H. J. SEILER CO.
## Patent Appeal No. 6619.

United States Court of Customs and Patent Appeals.

May 5, 1961.

Dos T. Hatfield, Washington, D. C., Porter, Chittick & Russell, Boston, Mass. (Robert B. Russell, Westwood, Mass., of counsel), for appellant.

Clarence W. Moore, Washington, D. C., (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

KIRKPATRICK, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board affirming the examiner's refusal of registration to the appellant, H. J. Seiler Co., of the mark "Seiler's," in script, as a service mark for catering food. The refusal was upon the basis of the registration of "Seiler's" also in script by Karl Seiler & Sons of Philadelphia for smoked and cured meats—namely, bacon, bologna, dried beef, boneless butts, ham, luncheon roll, meat loaf, pork roll, sausage, and scrapple.

It appears from a menu distributed by the appellant at a flower show in Boston and offered in evidence that, in addition to its catering business, it sells food

---

1. United States Senior District Judge for the Eastern District of Pennsylvania designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28 U.S.C.

products including seafood, chicken à la king and braised beef at "better food markets everywhere," also that it serves luncheon and dinner at a restaurant in Wellesley, Massachusetts.

The appellant's contention here is that the catering food service is so distinct from selling specific food products that there is no likelihood of the purchasing public's confusing its mark with that of the registrant. We cannot agree with this contention. The marketing practices of today are such that a customer who attends a banquet which he knows is catered by the appellant would, when he encounters a food product in the grocery store under an almost identical mark, naturally assumes that it came from the catering firm. The fact that catering firms do market food can hardly be disputed by this appellant in view of its solicitation, on menus used by it in its catering business, of customers for the retail sale of its food products, and the difference between a service for the catering of food and the actual sale of food is a rather fine legal distinction not likely to be drawn by laymen.

*It is, of course, possible that purchasers of the smoked meats would not be likely to call upon the smoked meat manufacturer for catering service. However,* if customers of the catering service believe that the smoked meat in the grocery store comes from the caterer, it is not necessary that they also believe that the smoked meat manufacturer is the caterer. Either supposition creates confusion as to source or origin.

The appellant also argues that confusion can be avoided by using accompanying legends with its mark and points to its menu above referred to on which the trademark appears with the words "caterers since 1873" in a decorative panel flanked by silhouettes of two servitors. The decision of this court in Salem Commodities, Inc. v. Miami Margarine Co., 244 F.2d 729, 44 CCPA 932, disposes of that contention. The court there pointed out that there was no assurance that the applicant would continue to use a picture which it had always used in the past in

connection with its mark and that it must, therefore, be presumed that the applicant intended to use the mark as registered rather than in connection with the picture.

The decision of the Trademark Trial and Appeal Board is affirmed.

Affirmed.